This is a suit in which the plaintiff, Joe Page, seeks to recover compensation against his former employer, Anderson-Post Hardwood Lumber Co., Inc., and its compensation insurance carrier, Central Surety Insurance Co., as for total, permanent disability. The demand is for compensation not exceeding four hundred weeks, at the rate of $18 per week.
In his petition plaintiff alleges that on February 26, 1941, while engaged in the performance of his said employment as a lumber stacker, he sustained an accident while picking up a piece of timber, 2" x 14" x 24', and suffered a traumatic hernia, on both his left and right sides at the inguinal rings.
He then sets out that on the promise of his employer to pay him $900 in cash and six months' compensation, he agreed to submit to an operation, which operation was performed by Dr. W.E. Reid. That after he was able to leave the hospital he called on his employer for the compensation he claimed had been agreed upon, but was informed that there was nothing coming to him. He does allege that while he was laid up in the hospital his wife and child were advanced groceries from the employer's store.
In the alternative he alleges that if he was suffering from a dormant syphilitic condition, as was suspected, that condition was aggravated by the injury which he received and by the operation which followed, all of which caused him to be totally incapacitated to do work of any reasonable character.
He also alleges that the insurance company which carried his employer's compensation insurance claims to have paid him compensation until June 21, 1941, at the rate of $10.07 per week. That the checks were sent to the Anderson-Post Hardwood Lumber Co., Inc., instead of being delivered to him, and the proceeds were appropriated by that company to the payment of the account which he had at the store.
Each defendant filed a separate answer but both are to the same effect. Briefly the defense is that plaintiff suffered no accidental injury while in the employ of Anderson-Post Hardwood Lumber Co., Inc., for which they are responsible but if he did suffer any such accident producing or causing the hernias complained of, he was successfully operated on for the same, has fully recovered and was able to resume his work at the time he was discharged by the physician and payments of compensation were stopped. Further the defendants set out that if he has any disability it is not due to the hernias or the operation he had but entirely to natural causes which have no connection whatever with the accident and the operation following the same. Lastly the defendants plead in the alternative that if plaintiff is suffering from a dormant diseased physical condition brought on by syphilis, and that if the accident and the operation aggravated the same, they offered him antiluetic treatment and to reinstate his compensation while undergoing such treatment, but that he declined their offer.
Upon trial of the case on the issues as thus presented to it, the lower court rendered judgment against the plaintiff and in favor of the defendants. This appeal was then taken by the plaintiff.
There is no testimony to corroborate the plaintiff's as to how the accident occurred, and all that he says is that he suffered a blow and then sensed the stinging or burning sensation which, as we know, usually accompanies the incipiency of a hernia. Be that as it may, he went to consult Dr. J.B. Younger, who attended the employees of the Anderson-Post Hardwood Lumber Co., Inc., and seemed to be, according to this doctor's testimony, suffering from and complaining of a bad cold. At the consultation, Dr. Younger discovered that he had a double hernia and recommended to him that he be operated on. He submitted to the operation which was performed by Dr. Reid on March 19, 1941, and on April 4, 1941, was released from the hospital and went back to his home. There is no question but what his employer paid all of the expenses incidental to the operation and that the insurance carrier issued checks for the payment of compensation up to the time of his discharge.
Before the compensation insurance carrier stopped issuing checks, plaintiff consulted an attorney and following this, he *Page 927 
was examined at the request of the insurance company, by Dr. R.G. Holcomb of Lake Charles, Louisiana. This was on June 30, 1941. Dr. Holcomb reported that he had fully recovered from the operation and on a Wasserman test plaintiff was shown to have plus four positive reaction to syphilis. From this finding by Dr. Holcomb, there developed the contention now made in his behalf, that the syphilitic condition had been dormant in his system and that it became activated either by the accident he sustained or by the operation.
Two physicians who were summoned as witnesses by the plaintiff, Dr. L. Marcello and Dr. F.P. Jones, seem to be of the opinion that plaintiff was suffering at the site of the operation for hernia, but in view of the more serious claim that is now made, that plaintiff is disabled because of a syphilitic condition that was brought into play by the operation, we do not think that there should be much importance attached to the testimony of these two doctors. Besides, according to the testimony of all the other doctors, including that of Dr. G.E. Barham, as well as that of Dr. Reid, Dr. Younger and Dr. Holcomb, plaintiff seems to have had a very successful recovery from the operation. The vital question in the case therefore, is whether or not the syphilitic condition may be said to have any connection whatsoever with the operation.
Dr. Marcello seems to be the only one who states that the man has tertiary syphilis which was present at the time of the operation and that his present condition has been exaggerated by the operation. Dr. Jones' testimony is somewhat vague. He seems to think that plaintiff's claim of disability can be attributed to the operation as well as to anything else. The testimony of all the doctors, however, is to the effect that the operation itself had nothing to do with arousing the latent syphilis in his system. According to them, the condition found would have manifested itself prior to the plaintiff's discharge from the hospital on April 6, 1941, and his dismissal by Dr. Younger in May, 1941, if the operation had had anything to do with it. It was on this testimony that the district judge found that there was no causal connection whatever between his present disability and the operation.
Moreover, it is shown that after the plaintiff left Louisiana, he went to South Carolina where he was given shots by an Army doctor for his syphilitic condition and after the administration of only three such treatments, he began to show improvement. It may be that if this unfortunate man had submitted to the treatment that was offered him by his employer following the operation, he might at this time be a well man and able to pursue the work he formerly did. He attempted to show that he never declined to take the treatment but what he did was to refuse to be administered by anyone of the doctors offered him by his employer. At first he says that the doctor he was sent to told him that he would have to pay himself for the treatments, which of course is not true and then came the question about the selection of another doctor, on which they could never agree. This taken into account with other parts of his testimony which was shown to be entirely unreliable, such as the agreement to pay him six months' compensation and his claim that he never endorsed the checks issued to him for compensation, leaves but little doubt in our minds that the claim presented was properly rejected by the judgment appealed from.
For the reasons stated, it is ordered that the judgment appealed from be affirmed.
 *Page 7